UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARYJO L.R. GALLO,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>HANOVER INSURANCE COMPANY,<br><br>　　　　　Defendant. | Civil Action No. 3:21-cv-188 (CSH)<br><br>APRIL 27, 2022 |

## MEMORANDUM AND ORDER DENYING MOTION TO DISMISS COUNT VIII

**HAIGHT, Senior District Judge:**

Plaintiff Maryjo L.R. Gallo, proceeding pro se, brings this Connecticut state law action against Defendant The Hanover Insurance Company concerning an insurance dispute arising out of Superstorm Sandy in October 2012. *See generally* Compl., ECF No. 1-1.

Defendant has moved to dismiss Count VIII of the complaint, which alleges a breach of the implied covenant of good faith and fair dealing. *See generally* Def.'s Notice of Pending Mots., ECF No. 3; Def.'s Mot. to Strike Count VIII, ECF No. 6. For the reasons stated below, Defendant's motion to dismiss Count VIII is **DENIED**.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In her pro se complaint, Plaintiff alleges the following. Plaintiff has owned a single-family home at 130 Five Mile River Road, Darien, CT since before October 29, 2012. Compl. ¶ 5. At all times relevant to the complaint, Plaintiff had fully paid Defendant to provide insurance coverage for that property. *Id.* ¶ 6. The specific policy she purchased was an "HO-3 Select Plus" policy, which covers (a) the dwelling itself, (b) other structures, (c) personal property, and (d) loss of use,

and also includes an "Inflation Guard Endorsement." *Id.* ¶ 5. On October 29 and 30, 2012, Superstorm Sandy "caused severe damage to the insured property, making the dwelling uninhabitable for a time." *Id.* ¶ 7. In the approximately two years following the storm, Defendant inspected Plaintiff's property and records, approved her claims under all four portions of the policy's coverage, and provided checks for the corresponding amounts not to Plaintiff, but to Plaintiff's mortgagee. *Id.* 2–3. Plaintiff alleges that Defendant should have made out and sent the checks for her personal-property and loss-of-use claims directly to her, but since Defendant did not, she anticipated that her mortgagee would deposit all the checks and eventually provide her with the portion of the payments relating to her personal property and loss of use. *Id.* 3–4; *see also* Pl.'s Opp'n to Def.'s Mot. to Strike Pl.'s Eighth Count 3–4, ECF No. 6-1.

      Plaintiff learned three-and-a-half years later, on April 5, 2019, that her mortgagee did not deposit the checks it received from Defendant and that the checks had therefore expired. *Id.* 3. Plaintiff notified Defendant of what she had learned. *Id.* The team leader of Defendant's Catastrophic Claims Unit confirmed to Plaintiff on April 11, 2019 that the mortgagee had failed to deposit the checks and that "Defendant had failed to notify Plaintiff of that fact," *id.* 3–4, and "promised the Plaintiff that . . . Defendant would pay her claim, with Coverages A and B [for the dwelling and other structures] to include the mortgagee as co-payee and with Coverages C and D [for personal property and loss of use] going solely to her," *id.* 6. Plaintiff once more provided Defendant with her records and access to the property so that a new adjuster could re-inspect the damage and repairs. *Id.* 6. Despite this, Defendant failed to replace the expired checks. *Id.* 4, 6. After October 18, 2019, Defendant ceased all contact with Plaintiff—going, in her words, "totally silent" and failing to respond to her calls, emails, and letters. *Id.* ¶ 32. On July 14, 2020, Plaintiff filed this complaint. Def.'s Notice of Removal ¶ 1, ECF No. 1.

Plaintiff brings seven claims sounding in breach of contract and one related claim—the subject of this motion to dismiss—sounding in tort law, alleging breach of the implied covenant of good faith and fair dealing. *See generally* Compl. Plaintiff argues that the "insurance policy is a contractual agreement which contains an implied covenant of good faith and fair dealing by the insurer . . . with the insured[.]" *Id.* ¶ 30. In support of her argument, Plaintiff both incorporates the allegations of the prior seven counts and adds that Defendant has "go[ne] totally silent at various time intervals," that is, "has refused to take phone calls, has failed to return phone calls, has failed to provide answers to questions, has failed to respond to letters/emails/postings, and has refused to address Plaintiff's claim during various time intervals, most recently on all dates since October 18, 2019." *Id.* ¶¶ 31–32 (internal quotation marks omitted). Plaintiff also alleges, with respect to both her breach-of-contract and bad-faith claims, that Defendant "repeatedly misinformed Plaintiff regarding [the Select Plus form's] enhanced coverages," including for trees, shrubs, and other plants destroyed by Superstorm Sandy. *Id.* 4–5.

Plaintiff initially filed the action in state court. Def.'s Notice of Removal ¶ 1. On December 23, 2020, Defendant filed a motion to strike Count VIII of the complaint. *Id.* ¶ 5. Plaintiff filed an opposition to that motion on January 22, 2021. *Id.* In her opposition, Plaintiff stated for the first time in this litigation that she sought at least $78,175 in damages. Pl.'s Mem. of Law in Supp. of Her Opp'n to Def.'s Mot. to Strike 2, ECF No. 1-3. Defendant, a New Hampshire corporation with its principal place of business in Massachusetts, timely removed the action to this Court on the basis of diversity jurisdiction, as Plaintiff is a Connecticut citizen and the amount in controversy exceeds $75,000. *See* Def.'s Notice of Removal ¶¶ 8–9; Pl.'s Aff. as to Domicile, Residency & Citizenship ¶¶ 1–2, ECF No. 19; 28 U.S.C. § 1446(b)(3). Defendant informed the Court of its intention to re-file the motion to strike as a motion to dismiss for failure to state a claim upon

3

which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). Def.'s Notice of Pending Mots. 1. The Court therefore treats Defendant's motion to strike as a motion to dismiss. *See also* Fed. R. Civ. P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it.").

## II. STANDARD OF REVIEW

In order to withstand a motion to dismiss filed pursuant to Federal Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a plaintiff has met this standard, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences [from those facts] in the plaintiff's favor." *CBF Indústria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58, 77 (2d Cir. 2017) (quoting *Crawford v. Cuomo*, 796 F.3d 252, 256 (2d Cir. 2015)). The court's review is limited to the "facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Disc. Bank N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991)).

A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although detailed factual allegations are not required, *Keiler v. Harlequin Enters. Ltd.*, 751 F.3d 64, 70 (2d Cir. 2014), mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" are insufficient, *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

It is well-established that "[p]ro se submissions are reviewed with 'special solicitude,' and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Bloodywone v. Bellnier*, 778 F. App'x 52, 53 (2d Cir. 2019) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007))). Nevertheless, even in a pro se case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice[,]" and the court furthermore may not "invent factual allegations" a pro se plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (quotation marks and citations omitted).

### III. DISCUSSION

Defendant moves to dismiss the claim that it breached the implied covenant of good faith and fair dealing. Its principal argument is that Plaintiff fails to allege facts "demonstrating the requisite state of mind on the part of the defendant." Def.'s Mem. of Law in Supp. of Mot. to Strike 6 n.3 (citing *Jazlowiecki v. Nationwide Ins. Co.*, No. HHDCV126036618S, 2014 WL 279600, at *3 (Conn. Super. Ct. Jan. 3, 2014)).

As explained in greater detail below, the Court concludes that Plaintiff's complaint alleges sufficient facts regarding Defendant's state of mind in its interactions with Plaintiff to survive the motion to dismiss. Accordingly, Defendant's motion to dismiss Count VIII will be denied.

Connecticut courts "recognize[] an implied covenant of good faith and fair dealing in insurance contracts." *Genovese Enters., Inc. v. Sphere Drake Ins. PLC*, No. CV950128855, 1996 WL 526800, at *1–2 (Conn. Super. Ct. Sept. 9, 1996) (citing *Buckman v. People Express, Inc.*,

5

530 A.2d 596, 599 (Conn. 1987)). The concept of good faith and fair dealing "is essentially a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended" and, in the context of insurance claims, its examination "requires a case-by-case analysis." *Verrastro v. Middlesex Ins. Co.*, 540 A.2d 693, 699 (Conn. 1988) (internal quotation marks and citation omitted). "[G]ood faith and fair dealing mean an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking means faithful to one's duty or obligation . . . an honest intention not to take an unconscientious [sic] advantage of another . . . ." *Buckman*, 530 A.2d at 599 (quoting trial court jury instructions that the Connecticut Supreme Court concluded were not in error).

Two leading cases of the Connecticut Supreme Court lay out the bookends of the doctrine. On the one hand, *Verrastro* affirmed a trial court judgment that an insurer did *not* breach the covenant where the full record indicated that the "plaintiffs hindered the defendant's ability to process their claim properly[,]" "the defendant did respond [to the plaintiffs] within the time period mandated by [statute,]" the insurer's requirement that the plaintiffs be examined under oath was supported by a provision of the insurance policy, and the nature of the damage—a fire of incendiary origin—made a lengthy investigation reasonable. 540 A.2d at 699. On the other hand, *Buckman* affirmed a jury verdict against an insurer for violation of the implied covenant where a plaintiff, after termination from employment, made multiple written and oral requests to the insurer (his former employer) requesting an insurance conversion form so he could continue his health insurance coverage, and those requests went unanswered. 530 A.2d at 597–99.

Connecticut's lower courts have had frequent occasion to address whether allegations against an insurer are sufficient to support a claim for breach of the implied covenant of good faith and fair dealing. The Superior Court has noted a split among Connecticut's lower courts regarding

6

the allegations required to survive a motion to strike. *See Tindall v. Travelers Prop. Cas. Corp.*, No. CV156061108S, 2016 WL 6603701, at *3–5 (Conn. Super. Ct. Oct. 7, 2016) (describing one line of cases stressing that such claims "must be alleged in terms of wanton and malicious injury [and] evil motive[,]" and another line "hold[ing] parties to a less stringent standard requiring that a plaintiff need only allege sufficient facts or allegations from which a reasonable inference of sinister motive can be made").

This Court need not wade into such contested waters to resolve The Hanover Insurance Company's motion to dismiss. Gallo alleges that Defendant, among other actions taken in bad faith, went "totally silent at various time intervals" by "refus[ing] to take phone calls, fail[ing] to return phone calls, . . . fail[ing] to provide answers to questions, . . . fail[ing] to respond to letters/emails/postings, and . . . refus[ing] to address Plaintiff's claim during various time intervals, most recently on all dates since October 18, 2019." Compl. ¶¶ 31–32 (internal quotation marks omitted). These allegations regarding Defendant's failure to communicate with Gallo closely resemble cases in which Connecticut courts have denied motions to strike or affirmed jury verdicts for plaintiffs.

In *Buckman*, the Connecticut Supreme Court affirmed a jury verdict finding a violation of the implied covenant of good faith and fair dealing where the insurer, which was also the plaintiff's former employer, failed to answer multiple written and oral requests by the plaintiff seeking an insurance conversion form. 530 A.2d 597–99. Similarly, the Connecticut Superior Court has denied motions to strike in at least two cases alleging, among other things, defendants' failure to respond promptly to plaintiffs' communications. *See Genovese Enters., Inc.*, 1996 WL 526800, at *1–2 (denying motion to strike where the plaintiff alleged that "[t]he defendant on several occasions failed to acknowledge and act with reasonable promptness in response to communications

7

from the plaintiff. . . . The defendant failed on several occasions to conduct a reasonable investigation into this loss . . . . The defendant on several occasions failed to promptly provide a reasonable explanation of the basis in the insurance policy for the denial of payment for the loss. . . . [And t]he defendant has refused to pay the monies due under the policy for this loss . . . ."); *Ferriolo v. Nationwide Ins.*, No. CV 97 0403433 S., 1998 WL 128821, at *2–3 (Conn. Super. Ct. Mar. 11, 1998) (denying motion to strike where the plaintiff alleged "that the defendant failed to pay her claims without conducting a reasonable investigation; failed to promptly provide a reasonable explanation or documentation for refusing to pay the claim; and failed to respond with reasonable promptness to the plaintiff's communications").

Gallo's allegations are sufficient to give rise to an inference that Defendant has acted in bad faith. Defendant not only failed to notify Gallo that her mortgagee had failed to deposit the checks and then, after promising Gallo that the checks would be re-issued, failed to actually re-issue them. Compl. 3–4, 6. These facts might support Gallo's claims under the contract but would not, on their own, rise to the level of tortious bad-faith conduct. *See, e.g.*, *Meehan v. Press, Inc.*, No. 321002, 1996 WL 107040, at *1–2 (Conn. Super. Ct. Feb. 22, 1996) (granting motion to strike claim that defendant had not paid plaintiff commissions it acknowledged were due to him, where plaintiff's claim of bad faith did no more than "'simply reiterate' the allegations of his breach of contract claim"); *Hope v. Fid. & Cas. Co. N.Y.*, No. CV010342581S, 2001 WL 1682780, at *1–2 (Conn. Super. Ct. Dec. 12, 2001) (granting motion to strike where plaintiff alleged that defendant had failed to pay plaintiff's claim, without making any further allegations of bad-faith conduct).

Here, Gallo's allegation that Defendant entirely ceased responding to her communications from October 18, 2019 until at least the filing of her complaint in state court on July 14, 2020, on an insurance claim stemming from October 2012 and on which Defendant had already conducted

a full investigation and concluded that coverage was warranted, raises the inference that Defendant acted without "an attitude or state of mind denoting honesty of purpose, freedom from intention to defraud and generally speaking means faithful to one's duty or obligation . . . an honest intention not to take an unconscientious [sic] advantage of another . . . ." *Buckman*, 530 A.2d at 599.

While the Superior Court, in *McCullough*, found to be insufficient claims that a defendant "[f]ail[ed] to accurately and timely communicate with the plaintiff[,]" and "[f]ail[ed] to timely and accurately handle her claim for benefits[,]" that case involved unusual circumstances that distinguish it from Gallo's claims. *McCullough v. Encompass Indem. Co.*, No. CV095011546S, 2009 WL 5342506, at *3–4 (Conn. Super. Ct. Dec. 10, 2009). In *McCullough*, the Superior Court concluded that the allegations were "simply claims that the defendant did not properly handle the plaintiff's claim for benefits under the policy[,]" not indications of dishonesty or moral obliquity as required for a finding that the defendants violated the implied covenant. *Id.* In that case, an inference of bad faith was precluded by the defendant's candid admissions, which included the following: "I know I probably did not mention the deduction of the land value as it did not occur to me and again I never had something like this before[;]" "It is possible because of this unique situation to me I did not adequately explain how it would work[;]" "I am sorry this took so long[;]" "P.S. I am learning a lot handling this claim which goes to show your [sic] never too old to learn." *Id.* at *4 n.1. These statements, the Superior Court concluded, "indicate that the defendant's conduct was anything but dishonest or sinister." *Id.* at *4. In this case, however, Gallo's complaint presents no facts such as these that would rebut the inference that Defendant's actions were dishonorable.

Gallo also alleges that Defendant "repeatedly misinformed Plaintiff regarding [the Select Plus form's] enhanced coverages," including for trees, shrubs, and other plants destroyed by

9

Superstorm Sandy. *Id.* 4–5. These allegations are made with respect to the breach of contract claims and are incorporated into Count VIII. *Id.* 7–8. While not dispositive here, similar allegations of misleading behavior have also been found sufficient to survive motions to dismiss or strike. *See Metsack v. Liberty Mut. Fire Ins. Co.*, No. 3:14-CV-01150 (VLB), 2015 WL 5797016, at *8–9 (D. Conn. Sep. 30, 2015) (denying motion to dismiss where plaintiffs alleged insurer "'denied their claim without any investigation' and misled [them] 'into believing that there was no coverage by citing inapplicable policy language'"); *Tindall*, 2016 WL 6603701, at *4 (denying motion to strike where insurer "intentionally cited irrelevant policy provisions in the denial letter in order to mislead [the plaintiffs] and to preserve its own assets").

Accordingly, the motion to dismiss Count VIII is denied, without prejudice to Defendant's ability to renew related arguments later in this litigation upon a more fully developed record.

## IV. CONCLUSION

For the reasons discussed above, the motion to dismiss Count VIII is therefore **DENIED**. This case shall proceed as to all of Plaintiff's claims in the complaint.

It is SO ORDERED.


Dated: New Haven, CT
       April 27, 2022

                                    *s/ Charles S. Haight, Jr.*
                                    CHARLES S. HAIGHT, JR.
                                    Senior United States District Judge